# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON MCGEHEE, STACEY JOHNSON, BRUCE WARD, TERRICK NOONER, and DON DAVIS,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES,<br><br>　　　　Defendant. | 4:18CV3092<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Plaintiffs' Motion to Compel Compliance with Subpoena, ECF No. 1, and Motion to Strike Index, ECF No. 17. Also before the Court are the Motion to Dismiss, ECF No. 13, and Motion for Hearing, ECF No. 24, filed by Defendant Nebraska Department of Correctional Services ("NDCS"). The Court has considered the records and evidence and concludes that a hearing is not necessary for disposition of these motions. For the reasons stated below, NDCS's Motion to Dismiss and Motion for hearing will be denied without prejudice to reassertion. Plaintiffs' Motion to Strike will be provisionally granted, consistent with this Memorandum and Order.

## BACKGROUND

On February 27, 2017, Governor Asa Hutchinson of Arkansas scheduled executions for eight inmates to occur in April 2017. *McGehee v. Hutchinson*, 854 F.3d 488, 491 (8th Cir.), *cert. denied*, 137 S. Ct. 1275 (2017). Shortly before the scheduled executions, nine prisoners, including Plaintiffs in this case, filed suit under 42 U.S.C. § 1983 alleging that Arkansas's method of execution violated the Eighth and Fourteenth

Amendments to the United States Constitution. *Id.* The U.S. District Court for the Eastern District of Arkansas preliminarily enjoined the executions. *Id.* at 494. The Eighth Circuit vacated the preliminary injunction, holding that "we cannot agree with the district court that the prisoners have demonstrated a significant possibility of establishing a known and available alternative that would significantly reduce a substantial risk of severe pain." *Id.* at 493. Relevant to this case, the Eighth Circuit reasoned that "[t]he possibility that Arkansas could acquire pentobarbital for use in executions is too speculative to justify stays of execution." *Id.* After remand, Plaintiffs filed an amended complaint asserting that "[m]ultiple alternative execution methods are feasible, readily available, and would significantly reduce Plaintiffs' suffering." *McGehee v. Hutchinson*, 4:17-cv-179, ECF No. 117 at 11 (E.D. Ark. June 21, 2018).

Arkansas proposes to execute Plaintiffs[1] Stacey Johnson, Bruce Ward, Terrick Nooner, and Don Davis by the serial intravenous injection of three drugs: (1) midazolam, (2) vecuronium bromide, and (3) potassium chloride. To prevail in their Eighth Amendment challenge, Plaintiffs are required to establish the existence of a "known and available alternative" to midazolam. *Glossip v. Gross*, 135 S. Ct. 2726, 2737-38 (2015); *Johnson v. Precythe*, 901 F.3d 973, 977–78 (8th Cir. 2018). To meet their burdens, Plaintiffs served subpoenas on the correctional departments of several states, including NDCS. ECF No. 4-1, seeking information about lethal injection substances in those states' execution protocols and the suppliers of such substances. In addition to NDCS,

---

[1] Jason McGehee, the first named plaintiff in this case, was granted clemency in September 2017, but remains named in the case caption. Eleven other inmates have since intervened in this case: Justin Anderson, Ray Dansby, Gregory Decay, Kenneth Isom, Latavious Johnson, Tim Kemp, Brandon Lacy, Zachariah Marcyniuk, Andrew Sasser, Thomas Springs, and Mickey Thomas.

Plaintiffs served subpoenas on departments of corrections in Texas, Missouri, and Florida.

The subpoena directed to NDCS seeks information regarding fentanyl, which was used in the August 14, 2018, execution of Carey Dean Moore, *see* ECF No. 4-7 at 1, and was planned for use in the execution of Jose Sandoval, *see* ECF No. 4-5 at 1. Plaintiffs contend that the protocol currently administered by the State of Nebraska—a four-drug cocktail including fentanyl, instead of a three-drug cocktail including midazolam—is a potential alternative to the Arkansas method of execution, and Plaintiffs seek additional discovery on its availability. To establish that fentanyl is available to Arkansas for use in its execution protocol, Plaintiffs have sought discovery from NDCS relating to its knowledge of, and communications with, any supplier of fentanyl.

Plaintiffs' subpoena requests that NDCS produce documents related, in part, to when, how, and from whom Nebraska has secured or tried to secure lethal injection drugs, including fentanyl. ECF No. 4-1. During the meet-and-confer process Plaintiffs agreed to narrow the scope of the subpoena. The two requests for which Plaintiffs seek an Order from this Court are Document Requests Nos. 1 and 4:

> 1. All Documents, Communications, and Things arising from or related in any way to Nebraska's efforts to obtain fetanyl for use in Executions in Nebraska, including but not limited to information about Nebraska's current supply of fetanyl, when Nebraska expects to obtain additional fetanyl, and the source(s) of fetanyl.
>
> 4. All Documents, Communications, and Things Related to any Supplier of fetanyl, including but not limited to Communications Related to the availability of fetanyl for use in Executions; Documents, Communications, or Things identifying Suppliers of fetanyl; Documents, Communications, or Things Related to any Supplier's present, past, or future willingness to supply fetanyl to any State for use in any Execution.

ECF No. 4-1 at 5, 7.

NDCS objects to the subpoena on three grounds: (i) that the United States District Court for the Eastern District of Arkansas does not have Article III jurisdiction to issue the subpoena, as Nebraska "is shielded from any obligation to comply with the subpoena pursuant to the Eleventh Amendment and the State's underlying sovereign immunity;" (ii) that Plaintiffs' subpoena seeks information that is "fundamentally irrelevant to any issue in the underlying litigation;" and (iii) that the subpeona subjects the NDCS to an undue burden by requesting documents confidential under Nebraska law, including "lethal substance provider(s) for noticed executions" and would disrupt the NDCS's "ability to obtain fentanyl and other lethal injection substances from existing supplier(s)." ECF No. 4-2 at 1-2.

The parties represent that they have attempted to confer and narrow the scope of Plaintiffs' requests to avoid litigation. On June 22, 2018, Plaintiffs sent an email to NDCS offering to narrow the scope of Plaintiffs' requests. ECF No. 4-3. Specifically, Plaintiffs agreed to seek information responsive only to the two requests described above. Plaintiffs acknowledge that both of their narrowed requests are focused on identifying suppliers of fentanyl. Pl. Br. at 4, ECF No. 2. Plaintiffs also renewed their previous offer to enter into a supplemental protective order to ensure all information is adequately protected. ECF No. 4-3.

Based on its objections, NDCS has not provided any information responsive to Plaintiffs' requests, nor has it provided a privilege log or other information about the documents withheld. Plaintiffs now move this Court under Fed. R. Civ. P. 45 to compel NDCS to comply with Plaintiffs' narrowed requests for information and documents.

**STANDARD**

4

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 and is subject to the rules that apply to other methods of discovery." *Quiles v. Union Pac. R.R. Co.*, No. 8:16CV330, 2018 WL 737403, at *1 (D. Neb. Feb. 6, 2018) (quoting *Desert Orchid Partners, LLC v. Transaction System Architects, Inc.*, 237 F.R.D. 215, 217 (D. Neb. 2006)). Rule 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("discovery may not be had on matters irrelevant to the subject matter involved in the pending action"). When a party issuing a subpoena makes a threshold showing that the discovery sought is relevant, a person or company resisting the subpoena bears the burden of showing that its objections are valid by providing specific explanations or factual support as to how the requested information is improper. *See Kinzer v. Remington Arms Co.*, No. 8:11-cv-75, 2011 WL 1659883, at *3 (D. Neb. May 3, 2011) (denying third-party motion to quash subpoena).

A subpoena will be quashed only "if the subpoena requires the disclosure of privileged matters or subjects a person to undue burden." *Juarez v. Walker Mfg. Co.*, No. 8:17CV497, 2018 WL 1955117, at *2 (D. Neb. Apr. 17, 2018). Rule 45(d)(1) requires that a party seeking discovery through a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subjected to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(3)(A)(iv) likewise prohibits the discovery of information "where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of

5

the information.*" In re Missouri Dep't of Corr.* (*MDOC II*), 839 F.3d 732, 736 (8th Cir. 2016).

**DISCUSSION**

The principal argument before the Court is whether the identity of NDCS's fentanyl supplier is relevant to Plaintiffs' case pending in the Eastern District of Arkansas. NDCS argues that the most basic reason to overrule and dismiss Plaintiffs' motion to compel is that NDCS's supplier is out of the lethal injection substance business entirely and will not make future sales of such substances to any state correctional department for use in executions, including NDCS. Thus, according to NDCS, the information sought from NDCS is not relevant to the Plaintiffs' Arkansas litigation. Because this issue is central to each of the motions pending, the Court will first address whether the information is relevant. The Court will then address Plaintiffs' Motion to Strike and NDCS's Motion to Dismiss.[2]

**I. Relevance of the Evidence**

If the Declaration of Pharmacy N is accurate, NDCS's supplier will not make future sales of fentanyl to any state correctional department for use in executions, and the information sought from NDCS is not relevant to the Plaintiffs' Arkansas litigation. To determine whether the information sought is relevant, the Court first reviews Plaintiffs' burden in the Arkansas litigation. The Court then looks to whether information about NDCS's supplier is relevant to Plaintiffs' burden.

### *A. Plaintiffs' Burden in Their Eighth Amendment Claim*

---

[2] At this stage, the Court can proceed on the parties' written arguments and evidence and a hearing is unnecessary.

To succeed on a claim challenging a method of execution under the Eighth Amendment, prisoners must satisfy a two-part test. *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion). First, "a prisoner must . . . 'establish that the method presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.'" *Johnson*, 901 F.3d at 977 (quoting *Glossip*, 135 S. Ct. at 2737). Second, "the prisoner must 'identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id*. (quoting *Glossip*, 135 S. Ct. at 2737).

Plaintiffs challenge Arkansas's use of midazolam as an anesthetic in its lethal injection protocol as unconstitutional. Several states adopted midazolam as a replacement for pentobarbital and/or sodium thiopental as the known suppliers of these drugs have become less willing to supply them to states for use in executions. Plaintiffs assert that midazolam has been associated with several failed executions, where the inmates suffered prolonged, tortured deaths. Other states, including Nebraska, have adopted fentanyl in their execution protocols. Plaintiffs argue that Nebraska's ability to acquire fentanyl shows a strong likelihood that Arkansas could likewise acquire fentanyl. Moreover, Plaintiffs assert that NDCS's information about its previous, current, or alternative fentanyl suppliers is relevant to whether fentanyl is a feasible, known alternative to midazolam.

### B. Relevance of Supplier Information to Plaintiffs' Claims

To meet their burden under *Baze*, Plaintiffs seek disclosure of information relating to Nebraska's execution protocol, including the identity of the current supplier of fentanyl Nebraska uses in executions. Under similar procedural facts, the Eighth Circuit has

7

concluded that information about a supplier's identity is irrelevant if the supplier states it would not provide lethal injection chemicals to another state. *MDOC II*, 839 F.3d at 736; *see also McGehee v. Texas Dep't of Criminal Justice*, No. MC H-18-1546, 2018 WL 3996956, at *10 (S.D. Tex. Aug. 21, 2018). In *MDOC II*, death-row inmates in Mississippi brought suit in the United States District Court for the Southern District of Mississippi, alleging that Mississippi's use of midazolam constituted cruel and unusual punishment. *Id.* at 734. The inmates served a subpoena on the Missouri Department of Corrections ("MDOC") seeking information regarding MDOC's use of pentobarbital in lethal injections, including the identity of MDOC's supplier of pentobarbital. *Id.* The district court refused to quash the subpoena, concluding that information about the use of pentobarbital as a single drug might be relevant to the plaintiffs' request to find a feasible and readily implemented alternative method of execution. *Id.*

On appeal,[3] the Eighth Circuit reversed the district court and concluded that the request was irrelevant and unduly burdensome to the State of Missouri. *Id.* at 736. M7, MDOC's supplier, stated that if its identity was disclosed, even under a protective order, it would not supply chemicals to any state agents, including the MDOC. *See MDOC II*, 839 F.3d at 735. Based on M7's declaration, the Eighth Circuit concluded that M7's identity had no relevance to the inmates' request. *MDOC II.*, 839 F.3d at 736. The court explained that the information sought would not "remain relevant once [the supplier]

---

[3] The Eighth Circuit addressed the appeal twice. On the first occasion, the Court held that an affidavit supporting MDOC's position was inherently speculative. MDOC requested rehearing at which time the pharmacy intervened to confirm that "[i]f disclosure of M7's identity is required, M7 will not supply lethal chemicals to the state of Mississippi. In fact, M7 will no longer supply lethal chemicals at all." *Id.* at 734-35.

8

indisputably refuses to make pentobarbital available to anyone." *Id.* Accordingly, the pharmacy's identity had no relevance to the inmates' Eighth Amendment claim.

The United States District Court for the Southern District of Texas reached the same result regarding Plaintiffs' subpoena to the Texas Department of Criminal Justice ("TDCJ"). *See McGehee v. Texas Dep't of Criminal Justice*, No. MC 18-MC-1546, 2018 WL 3996956, at *5 (S.D. Tex. June 1, 2018) ("*McGehee v. Texas*"). The court's reasoning in that case is persuasive here, because the requests at issue in the Texas subpoena were identical to the requests in this case, except that the Texas subpoena sought information regarding pentobarbital rather than fentanyl. *See McGehee v. Texas*, 2018 WL 3996956, at *5. TDCJ resisted the subpoena with the Declaration of Pharmacy X, its supplier of pentobarbital. *Id.* In the declaration, Pharmacy X confirmed that it "will not supply lethal injection chemicals to any state other than Texas under any circumstances." *Id.*, at *10. Based on this representation and relying on the Eighth Circuit's decision in *MDOC II*, the court concluded that "[o]n disclosure, information about Texas' supplier would cease to be relevant - Pharmacy X would no longer supply Texas with the drugs." *Id.*, at *11.

Like the supplier in *McGehee v. Texas*, ECF No. 23-2, and the supplier in *MDOC II*, Pharmacy N fears that if its identity is disclosed or revealed, anti-death penalty advocates will harass and retaliate against Pharmacy N, causing physical and financial harm to its owners and employees. ECF No. 14-2 at 2. As with the suppliers in *McGehee v. Texas* and *MDOC II*, Pharmacy N agreed to supply chemical to NDCS on the condition that Pharmacy N's identity be kept confidential. ECF No. 14-2 at 1. Moreover, Pharmacy N states that since it supplied lethal injection chemicals to NDCS, it has made a business

9

decision to decline any future sales of chemicals to any state, including Nebraska. ECF No. 14-2 at 1. Because Pharmacy N will not provide chemicals to any state, and for the reasons stated in *McGehee v. Texas* and *MDOC II*, its identity would have no relevance to Plaintiffs' Eighth Amendment claims.

## II. Plaintiffs' Motion to Strike

### A. Admissibility of Declaration of Pharmacy N

Although the Declaration of Pharmacy N demonstrates that its identity is irrelevant to Plaintiffs' claims, the Court must determine whether it may consider Pharmacy N's anonymous declaration. The federal unsworn declaration statute states that where any matter is required to be "proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same," such matter may be supported by an unsworn declaration if the declaration is "in writing of such person which is subscribed by him, as true under penalty of perjury[.]" 28 U.S.C. § 1746. The Court must determine whether it may consider the Declaration even though it is made anonymously and not by a person.

Courts have recognized that "[p]roceeding under a pseudonym in federal court is, by all accounts, 'an unusual procedure.'" *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quoting *M.M. v. Zavaras,* 139 F.3d 798, 800 (10th Cir. 1998)). "The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). While each of these cases addressed whether a party could proceed anonymously, similar standards have been applied to witnesses. For

example, in *Doe v. Los Angeles Unified Sch. Dist.*, No. 2:16-CV-305, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017), the court noted that "[i]n rare circumstances, witnesses may testify anonymously; however, 'absent extraordinary circumstances, witnesses do not testify anonymously under our system of laws.'" *Id*. (quoting *Diamond Pleasanton Enter., Inc. v. City of Pleasanton, No.* 12-CV-00254-WHO, 2015 WL 74946, at *1 (N.D. Cal. Jan. 5, 2015)). In *Doe*, the plaintiff introduced anonymous declarations but did not seek a protective order to keep juvenile witness names under seal, nor did the plaintiff file any document identifying the signatories to supporting declarations. *Id*. The court concluded that the declarations did not meet the requirements of § 1746 because "[w]ithout any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under 'penalty of perjury.'" *Id*. The court further reasoned that it could not discern whether the declarations were signed by any witness because the signature block was redacted. *Id*.

The court's reasoning in *Doe* is persuasive and applicable to the Declaration of Pharmacy N. While Pharmacy N made its declaration under the penalty of perjury, stated that it was over 21 and competent to testify in this matter, and even signed the Declaration as "Pharmacy N," the declaration was not made by a person. Pharmacy N refers to its business decisions and its "owner(s) and employees," suggesting that Pharmacy N is an entity. While it is possible for a non-human entity to be convicted of perjury, "[b]ecause the corporate entity itself does not possess any volitional capacity, the requisite knowledge and willfulness exists only if it is attributable to the [c]orporation through the acts of its agents." *United States v. Brown*, 763 F.2d 984, 993 (8th Cir. 1985); *accord United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 99 (2d Cir. 1983) ("a corporation

11

has no independent state of mind, the acts of individuals on its behalf m[ust] be properly chargeable to it."). The lack of a human signatory for the Declaration prevents any person or entity from being held to the statements within under penalty of perjury. Accordingly, the unsworn Declaration does not meet the requirements of § 1746.

NDCS argues that the Declaration is valid because courts accepted the same type of declarations in *McGehee v. Texas* and *MDOC II*. However, neither court explicitly approved this type of declaration. The Declaration of Pharmacy X in in *McGehee v. Texas* is markedly similar to the Declaration of Pharmacy N in this case. Pharmacy X purported to have personal knowledge, made its declaration under the penalty of perjury, and signed the declaration as "Pharmacy X." ECF No. 23-2. Pharmacy X also represented that it was "a licensed pharmacy located in Texas." *Id.* The court accepted the substance of the Declaration of Pharmacy X, but never explicitly approved the form of the declaration. The court specifically noted that "Plaintiffs do not object to the declaration and do not challenge its credibility." *Id.*, 2018 WL 3996956, at *9 n.33. It is unclear why Plaintiffs object to the Declaration of Pharmacy N but did not object to the Declaration of Pharmacy X, but the court in *McGehee v. Texas* did not expressly or implicitly approve the form of such a declaration.

Similarly, the Eighth Circuit in *MDOC II* did not address whether the declaration of M7 was sufficient for purposes of § 1746. The Eighth Circuit invited M7 to submit evidence and considered the Declaration of M7 in reaching its decision. *MDOC II.*, 839 F.3d at 735. There is no suggestion that any party objected to the Declaration of M7. Further, it is less clear that M7 was an entity and not a person. M7 described itself as a

"supplier" of chemicals, and never indicated whether M7 was a person or an entity.[4] In contrast, the Declaration of Pharmacy N is clearly made by an entity rather than an individual. Thus, the Eighth Circuit's acceptance of the evidence of MDOC's supplier is inapposite because the court did not consider the sufficiency of M7's declaration, nor is there any indication that the declaration had the same obvious statutory deficiencies as the Declaration of Pharmacy N.

The admissibility of Declaration N is essential to the Court's consideration of this matter. NDCS's principal resistance to the Motion to Compel is that Pharmacy N's identity bears no relevance to Plaintiffs' underlying lawsuit.[5] Accordingly, while the substance of the Declaration would demonstrate that Pharmacy N's identity is not relevant to Plaintiffs' underlying claims, the form of the Declaration does not meet the statutory requirements of an unsworn declaration. Because of the importance of the Declaration to NDCS's resistance, the Court will give NDCS an opportunity to submit a declaration that complies with the requirements of § 1746. While the new declaration need not disclose Pharmacy N's identity, it must provide some assurance that it is made by a person under the penalty of perjury, as required by the statute. NDCS can accomplish this through in camera

---

[4] The Western District of the Missouri Court of Appeals has held that "the Director acted within the discretion granted by the legislature when he revised the execution protocol on October 18, 2013, to include pharmacists . . . as execution team members." *Bray v. Lombardi*, 516 S.W.3d 839, 844 (Mo. Ct. App. 2017), The court specifically found "*pharmacists* 'M6' and 'M7' to be members of the execution team and *their identities* protected under Section 546.720." *Id.* at 845 (emphasis added).

[5] *See* NDCS Br. at 2, ECF No. 16, ("The most basic reason [to deny Plaintiffs' Motion to Compel Compliance with Subpoena] is that NDCS' supplier is out of the lethal injection business entirely . . .") (quoting the Declaration); *id.* at 4-7 (the entirety of Defendant's "The material sought is not relevant to the Plaintiffs' case" argument is hinged on the impact of the Declaration); *id.* at 6 ("The affidavit testimony before the Court supports a finding that Pharmacy N . . . would in no circumstances sell that substance to Arkansas. For that reason, the Court should . . . hold that the material sought from NDCS is not relevant.")

review or, at the very least, an anonymous affidavit that provides some assurance of compliance with the statute.

### B. Other Materials Not Disclosing Pharmacy N's Identity

In addition to the identity of Pharmacy N, Plaintiffs have requested information in general regarding NDCS's attempts to obtain fentanyl, and communications or documents evidencing this process. Plaintiffs argue that even if Pharmacy N's identity is irrelevant, the Motion to Compel Compliance with Subpoena should be granted as to the remainder of the materials requested. Plaintiffs made virtually the same request to TDCJ in *McGehee v. Texas*, and to the Missouri Department of Corrections in *McGehee v. Missouri Dep't of Corrections*, 2:18-mc-04138 (W.D. Mo.).

TDCJ provided some information in response to the subpoena that, in Plaintiffs' words, was "the exact documents Plaintiffs sought (albeit after redacting the actual information Plaintiffs need)." *McGehee v. Texas*, 18-mc-1546, Pl. Br. at 13, ECF No. 13 (S.D. Tex. July 16, 2018). Plaintiffs further described the "actual information Plaintiffs need" as "quite limited: the identity of Texas's supplier." *Id.* at 15. For this reason, the court in *McGehee v. Texas* did not address whether additional information was relevant to Plaintiffs' request.

In *McGehee v. Missouri Dep't of Corrections*, 2:18-mc-04138 (W.D. Mo.), Plaintiffs argued that its requests went beyond the identity of MDOC's suppler. In its recent decision, the Western District of Missouri granted Plaintiffs' motion to compel but modified Plaintiffs' subpoena requests, in part, to permit the MDOC to redact any identifying information regarding MDOC's supplier of pentobarbital. *See McGehee v. Missouri Dep't of Corrections*, 2:18-mc-04138, ECF No. 21 slip op. at 4, (W.D. Mo. Jan 15, 2019). The

14

court noted that "[t]he modified subpoena requests do not seek identification of the 2016 or 2018 M7 [MDOC's suppliers], and the Eighth Circuit's second decision in [*MDOC II*], 839 F.3d 732, does not apply." *Id.* slip op. at 6. The court noted that "[e]ven without identifying information . . . documents responsive to the modified subpoena requests are relevant to Plaintiffs' Eighth Amendment challenge in the underlying litigation given that such information could shed light on whether Arkansas is simply 'unwilling' to use pentobarbital in its executions or whether it is truly infeasible for Arkansas to do so." *Id.*

While the Court will withhold judgment on this request until after NDCS has had an opportunity to submit a proper declaration, the Court is inclined to follow the decision of its sister court in the Western District of Missouri. Other than the substance at issue, Plaintiffs' requests in this action are virtually identical to their requests to the MDOC in *McGehee v. Missouri Dep't of Corrections*. Accordingly, even if NDCS does produce a compliant declaration, information regarding its attempts to obtain fentanyl, and communications or documents evidencing this process, may be relevant to Plaintiffs' underlying claims. The Court encourages the parties to explore whether modified requests, similar to those in *McGehee v. Missouri Dep't of Corrections*, would be helpful to resolve this matter more efficiently.

### III.  NDCS's Motion to Dismiss

#### A.  State Sovereign Immunity

The Court cannot yet determine whether NDCS is entitled to sovereign immunity in this case. In support of its position, NDCS relies on *In re Missouri Dep't of Natural Res.*, 105 F.3d 434 (8th Cir. 1997) ("*MDNR*") and *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012). However, in *MDNR*, the Eighth Circuit held, "There is simply

15

no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *MDNR*, 105 F.3d at 436. Under similar facts, the Western District of Missouri concluded that neither case stands for the proposition that states are immune from motions to compel, such as the one at issue in this case. *See McGehee v. Missouri Dep't of Corrections*, 2:18-mc-04138, ECF No. 21, slip op. at 10-11.

NDCS argues that compliance with the subpoena "would signal to possible future suppliers that Nebraska cannot invoke the legal means at its disposal to keep their identities secret in order to secure a stable supply of the means to carry our capital sentences thereby interfering with a core sovereign interest." NDCS Br. at 13, ECF No. 16. NDCS's argument hinges, in part, on the identity or disclosure of Pharmacy N. Because issues remain as to the sufficiency of the Declaration and the scope of Plaintiffs' request, the Court will deny NDCS's motion, without prejudice to reassertion.

### B. Undue Burden

NDCS argues that compliance with Plaintiffs' request would pose an undue burden by forcing the disclosure of material reasonably calculated to lead to the identity of execution team members, the confidentiality of which is protected under Nebraska law. Neb. Rev. Stat. § 83-967(2). The State of Nebraska advanced virtually the same argument to shield the disclosure of records implicated here in public records litigation in State court. *State ex rel. Miller and ACLU v. Frakes*, No. CI-17-4283 (Lancaster Cnty. Dist. Ct.), *appeal docketed*, No. S-18-606 (Neb. July 19, 2018). In *State ex. rel. Miller*, the trial court held that records not identifying execution team members on their face were not protected under § 83-967(2). *State ex rel. Miller and ACLU v. Frakes*, No. CI-17-4283, slip op. at 4 (Lancaster Cnty. Dist. Ct. June 18, 2019). The trial court reasoned that

16

the "evidence is speculative at best that disclosure of these documents would be reasonably calculated to lead to such identification." *Id.*

If the state trial court's decision, is upheld,[6] it may moot NDCS's arguments regarding its resistance to the subpoena in this action. Moreover, until NDCS submits a valid declaration for Pharmacy N, the Court cannot assess whether compliance with Plaintiffs' request would impose an undue burden. Accordingly, the Court will deny NDCS's motion without prejudice to reassertion.

## CONCLUSION

The Declaration of Pharmacy N, if given weight, demonstrates that the Pharmacy's identity is not relevant to Plaintiffs' underlying claims. Nevertheless, the Declaration fails to meet the requirements of an unsworn affidavit. The Court will provide NDCS an opportunity to submit a corrected affidavit before the Court determines whether Pharmacy N's identity is relevant. Accordingly,

IT IS ORDERED:

1. Plaintiffs' Motion to Strike Index, ECF No. 17, is provisionally granted, subject to paragraph 2 below;

2. Consistent with this Memorandum and Order, on or before February 8, 2019, Defendant Nebraska Department of Correctional Services shall submit a declaration that complies with 28 U.S.C § 1746, or other satisfactory evidence regarding Pharmacy N;

---

[6] The trial court's decision is on appeal and the matter has been fully briefed before the Nebraska Supreme Court. To this Court's knowledge, the matter has not yet been heard. *See* ECF No. 20-5.

3. If Defendant Nebraska Department of Correctional Services fails to submit a declaration or other evidence in compliance with paragraph 2, the Court will consider the Motion to Compel without such evidence;

4. Defendant's Motion to Dismiss, ECF No. 13, is denied without prejudice to reassertion; and

5. Defendant's Motion for Hearing, ECF No. 24, is denied without prejudice to reassertion.

Dated this 17th day of January, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge