# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON MCGEHEE, STACEY JOHNSON, BRUCE WARD, TERRICK NOONER, and DON DAVIS,<br><br>Plaintiffs,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES,<br><br>Defendant. | 4:18CV3092<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Plaintiff's Motion to Compel, ECF No. 1, and the Supplemental Index of Evidence, ECF No. 31, submitted by Defendant Nebraska Department of Correctional Services ("NDCS") in opposition to the Motion to Compel. For the reasons stated below, Plaintiffs' subpoena requests will be modified under Fed. R. Civ. P. 45(d) and the Motion to Compel will be granted, in part.

## BACKGROUND

The factual and procedural background of this case is detailed in the Court's Memorandum and Order dated January 17, 2019, ECF No. 27, which is incorporated herein by reference. In response to the Court's prior Memorandum and Order, NDCS submitted the Declaration of the President of Pharmacy N (the "Declaration"), ECF No. 31-1. The Declaration is nearly identical to the stricken Declaration of Pharmacy N, ECF No. 14-2, except that it is made by Pharmacy N's president who, as acknowledged in the Declaration, could be held criminally responsible for making false statements.

Plaintiffs submitted a Supplemental Index of Evidence, ECF No. 28-1, containing communications between the parties regarding the scope of Plaintiffs' request for production of documents. Plaintiffs offered to narrow the scope of the subpoena to the following:

> Information responsive to the following requests, with pharmacy identities and any other identifying information redacted:
>
> 1. Communications and documents exchanged between NDCS and Pharmacy N regarding Pharmacy N's decision to supply fentanyl to Nebraska for use in executions;
>
> 2. Communications and documents regarding how NDCS was able to identify Pharmacy N and convince Pharmacy N to supply fentanyl to Nebraska for use in executions; and
>
> 3. Communications and documents exchanged between NDCS and suppliers other than Pharmacy N, between January 1, 2017, and the present, regarding NDCS's attempts to convince other suppliers to supply fentanyl to Nebraska for use in executions.

Ex. 19 at 2-3, ECF No. 28-1. NDCS denied the request, explaining that it wanted to ensure that the Court addressed its Eleventh Amendment arguments. *Id.* at 2. In its sur-reply, NDCS requested that the Court address its jurisdictional challenge.

## DISCUSSION

### I. Sufficiency of the Declaration

In the Court's prior Memorandum and Order, the Court held that the Declaration of Pharmacy N did not comply with the federal unsworn declaration statute. The statute states that where any matter is required to be "proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same," such matter may be supported by an unsworn declaration if the declaration is "in writing of such person which is subscribed by him, as true under penalty of perjury[.]" 28 U.S.C. § 1746. The Declaration of Pharmacy N was deficient because it lacked "any

record whatsoever of a witness's identity or their signature, [and the] declarant cannot be held to their statements under 'penalty of perjury.'" *See Doe v. Los Angeles Unified Sch. Dist.*, No. 2:16-CV-305, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017).

The Declaration of the President of Pharmacy N satisfies § 1746 for purposes of this action. The Declaration is made by a readily identifiable person, the President of Pharmacy N, who, according to the Declaration, has executive authority over Pharmacy N and direct knowledge of its business decisions. *Id.* at 1. The Declaration acknowledges that the President of Pharmacy N could be held criminally responsible if any statements are false. *Id.* The Declaration explains that the President of Pharmacy N used a pseudonym because using the President's actual name would reveal the identity of Pharmacy N. *Id.* at 1-2. Based on these assertions, the Court is satisfied that the Declaration meets the requirements of § 1746. *See Springer v. I.R.S.*, No. S-97-0092 WBS GGH, 1997 WL 732526, at *5 (E.D. Cal. Sept. 12, 1997) (§ 1746 does not prohibit pseudonyms, "it merely requires by implication that the fact of such use is expressly stated in the declaration, and that the actual person can be identified.").

## II. Relevance of the Identity of Pharmacy N

The Court previously held that if assertions in the Declaration of Pharmacy N were true, Pharmacy N's identity is not relevant to Plaintiffs' Eighth Amendment challenge to Arkansas's method of execution. The Eighth Circuit has held that information about a supplier of execution drugs would not "remain relevant once [the supplier] indisputably refuses to make [the drugs] available to anyone." *In re Missouri Dep't of Corr.* (*MDOC II*), 839 F.3d 732, 736 (8th Cir. 2016). Accordingly, the pharmacy's identity in *MDOC II* had no relevance to the inmates' Eighth Amendment claim. *Id.*; see also *McGehee v. Tex.*

3

*Dep't of Criminal Justice*, No. MC 18-MC-1546, 2018 WL 3996956, at *5 (S.D. Tex. June 1, 2018) ("On disclosure, information about Texas' supplier would cease to be relevant - Pharmacy X would no longer supply Texas with the drugs.").

The Declaration confirms that Pharmacy N fears that if its identity is disclosed or revealed, anti-death penalty advocates will harass and retaliate against Pharmacy N, causing physical and financial harm to its owners and employees. ECF No. 31-1 at 2. As with the suppliers in *McGehee v. Texas* and *MDOC II*, Pharmacy N agreed to supply chemicals to NDCS on the condition that Pharmacy N's identity be kept confidential. ECF No. 31-1 at 1. The Declaration states that since it supplied lethal injection chemicals to NDCS, Pharmacy N has made a business decision to decline any future sales of chemicals to any state, including Nebraska. ECF No. 31-1 at 1. Because Pharmacy N will not provide chemicals to any state, and for the reasons stated in the Court's prior Memorandum and Order, Pharmacy N's identity has no relevance to Plaintiffs' Eighth Amendment claims.[1] Accordingly, to the extent Plaintiffs seek to compel disclosure of Pharmacy N's identity, the Motion to Compel is denied.

## III. Relevance of Redacted Material

As noted in its prior order, in addition to the identity of Pharmacy N, Plaintiffs requested information in general regarding NDCS's attempts to obtain fentanyl, and communications or documents evidencing this process. Plaintiffs argue that even without Pharmacy N's identity, the Motion to Compel should be granted as to the remainder of

---

[1] The Court acknowledges that the United States District Court for the Northern District of Florida disagrees with the holding of *MDOC II* and this Court. *See McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18 slip op. at 20-21 (N.D. Fla. Feb. 2, 2019). However, the holding in *MDOC II* is binding on this Court.

4

the materials requested. Plaintiffs essentially ask this Court to modify their subpoena to permit redaction of any information regarding "pharmacy identities and other identifying information." Ex. 19 at 2-3, ECF No. 28-1. The Court first considers whether redacted information would be relevant to Plaintiffs' Eighth Amendment claim.

The Western District of Missouri addressed this issue after concluding that Plaintiffs' requests should be modified to redact information about Missouri's pentobarbital supplier. *McGehee v. Mo. Dep't of Corr.*, 2:18-mc-04138, ECF No. 21 slip op. at 4, (W.D. Mo. Jan 15, 2019). The court held that even without information identifying Missouri's pentobarbital suppliers, documents responsive to Plaintiffs' requests were "relevant to Plaintiffs' Eighth Amendment challenge in the underlying litigation given that such information could shed light on whether Arkansas is simply 'unwilling' to use pentobarbital in its executions or whether it is truly infeasible for Arkansas to do so." *Id.* slip op. at 6 (citing *Johnson v. Precythe*, 901 F.3d 973, 979–80 (8th Cir. 2018)). Accordingly, the court modified Plaintiffs' subpoena requests under Fed. R. Civ. P. 45(d). *Id.*

Similarly, even without information identifying Pharmacy N, some of Plaintiffs' modified requests are relevant to the underlying issue in Plaintiffs' Arkansas litigation. Plaintiffs voluntarily offered to narrow their requests to communications and documents between NDCS and Pharmacy N leading up to Pharmacy N's decision to supply fentanyl. Ex. 19 at 2-3, ECF No. 28-1. Plaintiffs' modified requests permit redaction of Pharmacy N's identity. *See* Ex. 19 at 2-3, ECF No. 28-1. Because NDCS was ultimately successful in its requests to obtain fentanyl, the information sought may be relevant to whether it is truly infeasible for Arkansas to use fentanyl in its executions.

Although Plaintiffs' modified requests seek relevant information, the Court will not adopt the requests verbatim. In addition to the information described above, Plaintiffs' modified requests seek "communications and documents exchanged between NDCS and suppliers other than Pharmacy N, between January 1, 2017, and the present, regarding NDCS's attempts to convince other suppliers to supply fentanyl to Nebraska for use in executions." Ex. 19 at 2-3, ECF No. 28-1. Plaintiffs assert that this information is relevant because even though Nebraska was unsuccessful in obtaining supplies from other pharmacies, that "does not mean that Arkansas would be unsuccessful in doing so." Pl. Br. at 3, ECF No. 19. Plaintiffs do not demonstrate how NDCS's failed attempts to obtain drugs from other suppliers would be relevant to their underlying Eighth Amendment claim. Accordingly, the Court will modify Plaintiffs' subpoena requests under Fed. R. Civ. P. 45(d) as stated below.[2]

## IV. State Sovereign Immunity

Because some of Plaintiffs' requests are relevant to their underlying claim, the Court addresses NDCS's argument that sovereign immunity bars the subpoena. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618–19 (8th Cir.

---

[2] As suggested in its prior Memorandum and Order, the Court's modified requests are modeled after the modifications made by the Western District of Missouri in *McGehee v. Mo. Dep't of Corr.*, 2:18-mc-04138, ECF No. 21 slip op. at 11-12 (W.D. Mo. Jan 15, 2019).

1995) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment bars suit in federal court against states or state agencies "for any kind of relief, not merely monetary damages." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Ex parte Ayers*, 123 U.S. 443, 505 (1887) ("The very object and purpose of the Eleventh Amendment was to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties."). NDCS argues that a subpoena commanding a non-party to produce records is a "suit" for Article III purposes and therefore this action infringes on the State of Nebraska's autonomy.

### A. Subpoenas to Non-Party States

The Eighth Circuit rejected an argument similar to NDCS's in *In re Missouri Dep't of Nat. Res.* ("*Missouri DNR*"), 105 F.3d 434, 436 (8th Cir. 1997). In *Missouri DNR*, the district court denied a state agency's motion to quash subpoenas duces tecum served on it by litigants in a case in which the state agency was not a party. *Id.* at 435. The agency sought a writ of mandamus directing the district court to vacate its order arguing, in part, that the subpoenas infringed upon Missouri's sovereign immunity. *Id.* at 435, 436. The Eighth Circuit denied the request, holding that "[g]overnmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts." *Id.* at 436 (citing *United States v. Procter & Gamble*, 356 U.S. 677, 681 (1958)). The court reasoned that the state agency failed to show "how production of these documents infringes on the State of Missouri's autonomy or threatens its treasury." *Id.*

The holding in *Missouri DNR* remains good law in the Eight Circuit and is binding in this case. NDCS nevertheless argues that the court in *Missouri DNR* "strongly

7

suggested" that the Eleventh Amendment would bar a subpoena that "infringes on a State's autonomy or threatens its treasury."  NDCS Br. at 10-11, ECF No. 16 (quoting *Missouri DNR*, 105 F.3d at 436).  However, the holding in *Missouri DNR* does not support this position. While the Eighth Circuit recognized that the Missouri DNR failed to show that the subpoenas infringed on the State of Missouri's autonomy or pocketbook, the court stated that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."  *Missouri DNR*, 105 F.3d at 436.

Despite the Eighth Circuit's unqualified language, NDCS argues that the tea leaves of more recent precedent call into question the holding in *Missouri DNR*.  NDCS relies on the Eighth Circuit's decision on tribal sovereign immunity in *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012).  In *Alltel*, the Ogallala Sioux Tribe moved to quash third-party subpoenas on the basis of tribal immunity.  *Id.* at 1102.  The district court denied the motion to quash, relying on the Eighth Circuit's decision in *Missouri DNR*.  *Id.* at 1104.  The Eighth Circuit held that the district court's reliance was misplaced because "[a]lthough Eleventh Amendment precedents are instructive, tribal immunity 'is not congruent with that which the Federal Government, or the States, enjoy.'" *Id.* (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986)).  Accordingly, the court "declined to decide whether sovereign immunity provided states with protection against 'disruptive third-party subpoenas that would clearly be barred in a State's own courts.'" *In re: Mo. Dep't of Corr.*, 661 F. App'x 453, 456 (8th Cir.), *reh'g granted and opinion vacated* (Sept. 13, 2016), *on reh'g sub nom. In re Mo. Dep't of Corr.*, 839 F.3d 732 (8th Cir. 2016) (quoting *Alltel*, 675 F.3d at 1104–05).

The Court cannot read *Alltel* as overruling or questioning the court's holding in *Missouri DNR*. Other states' correctional departments subpoenaed by the Plaintiffs in this case have raised this argument and each court, citing to Eighth Circuit precedent, has refused to hold that sovereign immunity bars the subpoenas. *See McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18 slip op. at 1 (N.D. Fla. Feb. 2, 2019); *McGehee v. Missouri Dep't of Corr.*, 2:18-mc-04138, ECF No. 21 slip op. at 10, (W.D. Mo. Jan 15, 2019). The Court, following binding Eighth Circuit precedent, agrees with its sister courts that sovereign immunity does not categorically bar the subpoenas in this case.

### B. Infringement on State Autonomy

NDCS acknowledges that if its theory of sovereign immunity applies, NDCS must show that the subpoena "infringes on a State's autonomy or threatens its treasury."[3] *Missouri DNR*, 105 F.3d at 436. NDCS makes no argument that the subpoena threatens Nebraska's treasury but argues that the evidence conclusively shows "compliance with the subpoena would be disruptive to the autonomy of the State of Nebraska." ECF No. 4-2 at 1. NDCS asserts two main arguments for how the subpoena is disruptive. First, after "extraordinary difficulty" in identifying a supplier, Pharmacy N agreed to supply the drugs on the condition that its identity would remain secret. Frakes Aff. at 6, ECF No. 14-1; Declaration at 2, ECF No. 31-1. NDCS asserts that compliance with the subpoena

---

[3] As noted above, in denying a motion to quash third-party subpoenas, the court in *Missouri DNR* reasoned that the state agency failed to show "how production of these documents infringes on the State of Missouri's autonomy or threatens its treasury." 105 F.3d at 436. NDCS apparently interprets this language as a standard for when sovereign immunity would bar a subpoena rather than an explanation for why subpoenas do not implicate the Eleventh Amendment. The Court need not decide whether this language is a standard because even if it is, NDCS has not shown that the modified subpoena infringes on Nebraska's autonomy.

9

would signal to possible future suppliers that Nebraska cannot legally keep their identities secret, thus jeopardizing NDCS's ability to secure a stable supply of drugs to carry out future executions. Because the modified requests permit redaction of Pharmacy N's identity and any identifying information, these concerns are moot.

Second, NDCS argues that the subpoena forces disclosure of "material reasonably calculated to lead to the identity of execution team members" in violation of Nebraska's execution team secrecy statute. Neb. Rev. Stat. § 83-967(2). Section 83-967(2) states:

> The identity of all members of the execution team, and any information reasonably calculated to lead to the identity of such members, shall be confidential and exempt from disclosure pursuant to sections 84-712 to 84-712.09 and shall not be subject to discovery or introduction as evidence in any civil proceeding unless extraordinary good cause is shown and a protective order is issued by a district court limiting dissemination of such information.

*Id.* Thus, identities of execution team members are exempt (1) from disclosure as public records requests (the "public records exemption") and (2) from discovery unless certain narrow circumstances apply (the "discovery exemption").

As noted in this Court's previous Memorandum and Order, the State of Nebraska raised the public records exemption in currently pending State court proceedings. *State ex rel. Miller and ACLU v. Frakes*, No. CI-17-4283 (Lancaster Cnty. Dist. Ct.), *appeal docketed*, No. S-18-606 (Neb. July 19, 2018). In *State ex. rel. Miller*, the trial court held records not identifying execution team members were not protected under § 83-967(2). *State ex rel. Miller and ACLU v. Frakes*, No. CI-17-4283, slip op. at 4 (Lancaster Cnty. Dist. Ct. June 18, 2018). The trial court reasoned that the "evidence is speculative at best that disclosure of these documents would be reasonably calculated to lead to such identification." *Id.* NDCS states that the *Miller* case when decided by the Nebraska Supreme Court, "will control on whether the State can viably argue that disclosure would

10

violate Nebraska's execution team secrecy statute." NDCS Br. at 16, ECF No. 15. Although a decision in *Miller* may address whether supplier identities fall under the public records exemption, it will not address whether the information sought in this case would fall under the discovery exemption. Accordingly, the Court need not hold its ruling in abeyance pending the Nebraska Supreme Court's ruling.

NDCS has not shown that the information sought in the modified requests is protected under the discovery exemption of § 83-967(2). The modified subpoena requests allow redaction of Pharmacy N's identity as well as other identifying information and require that production be made subject to a protective order. No evidence in the record suggests the modified subpoena requests require disclosure of members of the execution team or any information reasonably calculated to lead to the identity of such members. Accordingly, even if the discovery exemption of § 83-967(2) is applicable, NDCS has not shown that the information sought is protected or that disclosure would infringe on state autonomy.

**CONCLUSION**

The Declaration of the President of Pharmacy N demonstrates that the identity of Pharmacy N is not relevant to Plaintiffs' underlying Eighth Amendment claims. However, the subpoena requests, as modified under Fed. R. Civ. P. 45(d), seek other information that may be relevant to Plaintiffs' claims. Following Eighth Circuit precedent, the Eleventh Amendment does not categorically bar Plaintiffs' subpoena. Even under NDCS's theory of sovereign immunity, NDCS has not shown that that the modified subpoena requests infringe on the autonomy of the State of Nebraska. Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion to Compel, ECF No. 1, is granted, in part;

2. On or before April 12, 2019, NDCS is ordered to produce information responsive to the following modified requests with Pharmacy N's identity and any other identifying information redacted:

    a. Communications and documents exchanged between NDCS and Pharmacy N regarding Pharmacy N's decision to supply fentanyl to Nebraska for use in executions;

    b. Documents regarding how NDCS was able to identify Pharmacy N and persuade Pharmacy N to supply fentanyl to Nebraska for use in executions; and

    c. Communications between NDCS and Pharmacy N regarding Pharmacy N's decision to supply fentanyl to Nebraska for use in executions; and

3. On or before March 29, 2019, the parties shall confer and agree to the terms of a protective order or shall agree on whether the protective order in the underlying litigation, ECF No. 4-11, will govern NDCS's responses.

Dated this 15th day of March, 2019.

                                                  BY THE COURT:

                                                  s/Laurie Smith Camp
                                                  Senior United States District Judge